The Circuit Court judge filed the following opinion: *Page 234 
"This matter comes before the court on an appeal from a municipal assessment confirmed by the municipal authority for the construction of a surface water drain. Under the Home Rule act the duty of the court is to ascertain whether the assessment is just and fair, and if not, to make an order correcting it as to those appellants whose assessments are unjust or unfair.
"The construction was for the purpose of improving the main outlet of the surface drainage system serving the so-called Crooked brook drainage area in the township of Maplewood, roughly speaking, as there are some variations. The drainage area is bounded by Wyoming avenue on the west, Cedar Lane on the north, Maplewood avenue on the east, and Clinton and Mountain avenues on the south.
"The improvement in question was the construction of a drain commencing in Jefferson avenue between Brookside drive and Woodlawn road, following with some variations the bed of Crooked brook, and running underneath the Delaware, Lackawanna and Western tracks near Baker street and across Dunellen road to the junction with the east branch of the Rahway river near Baker street. At some points the drain is of open construction and at other points it is closed. It carries the water which previously had drained through Crooked brook and in effect, abandons Crooked brook as an open stream and makes it a drain. At one part it relieves the drainage from the bed of Crooked brook for a short distance. The drainage into Crooked brook and into the new outlet comes principally from the laterals constructed through the drainage area.
"The cost of the improvement was $105,563.18. From this there were some deductions, leaving a net cost to the township of $101,496.19. There was assessed on property holders claimed to have been peculiarly benefited by this improvement the sum of $65,105.46.
"The method of imposing the assessment on the individual property holders was to divide the drainage area of Crooked brook into sections and to assess the property in each section *Page 235 
by the square foot method. The rate was graded according to the sections so that those at the bottom of the slope and nearer the outlet were assessed at the highest rate, and those farthest away from the improvement at the lowest rate. I see no objection, generally speaking, to this method that was adopted in so far as it applies to those properties that have received special or peculiar benefits.
"The assessment is bad in part because it includes in the assessment properties from which surface water has not been taken or intercepted by any lateral or by the drain itself. I can see no objection to assessing for a new outlet such properties as have benefited by the construction of laterals. They have had the benefit of using this open brook as an outlet to a drainage system up to the time of the construction of the improvement in question; the authorities having deemed it necessary to turn this brook into a drain for the proper discharge of the water collected by the laterals and which naturally comes to the brook, it now becomes the obligation of those benefited by the laterals to pay a part of the cost of this new outlet to the extent to which their property has peculiarly benefited, the outlet being a peculiar benefit to them. Where laterals so congest water in a brook as to render it an inadequate outlet, assessment for a more adequate outlet may be made.
"The property which I have referred to as not being benefited by the construction of a drain is in the same category as the property which was considered by me in the case of The Townshipof Millburn v. Smith, 9 N.J. Mis. R. 307. The property which I refer to is that where the drain, including previously constructed laterals, does not pass by the property so as to give it a tapping benefit either actually, or the right to have it, where the drain or lateral is so situated that it does not intercept water which, were it not for this construction, would pass over or in front of it. This is based on the principle that after the water leaves a person's property and goes onto the property of others he is not responsible for it. *Page 236 
"The case of Breakenridge Tichenor v. City of Newark,94 N.J.L. 361, has been referred to by reason of the remarks made in the opinion in that case that even though the laterals do not pass the property or do not intercept water from flowing across it there may still be a benefit from a drain by reason of its furnishing greater facilities. Just what greater facilities the court referred to in that case I do not know, but I can see that there would be furnished better facilities, one of which would be the preventing of water backing up on property. If there is any property so benefited in this case which does not have a lateral passing by it or water intercepted by reason of a lateral, that may be brought to the court's attention on the settlement of the order.
"There seems to be a claim on behalf of the township that the surface gutter which carries the water in front of a person's property to a place farther on where it enters the lateral, is a lateral, thus making it chargeable with peculiar benefits by reason of the construction of the new outlet. With this claim I do not agree; it is a mere change in the surface, facilitating the passage of water across or in front of the person's property, and the mere construction of this gutter does not render him responsible for the construction of laterals or of the outlets lower down in the drainage area.
"In my consideration of this case I at first endeavored to separate the properties assessed for this improvement which are appealing here and which, under my ruling, are not benefited, but I feel that justice will be better served to allow the parties to apply my ruling to the various properties and where there is any dispute between them I will hear them as to those specific properties.
"Clearly, the properties along the westerly side of Maplewood avenue which have been assessed for the improvement, are not peculiarly benefited by the improvement, and therefore as to them the assessment should be set aside. Where there is peculiar benefit, the amount assessed on particular properties should not be disturbed unless it clearly appears that the amount assessed is unfair or unjust. *Page 237 
"The report of the board of commissioners is entitled to great weight and should be accepted as accurate unless controverted by clear and convincing proof to the contrary. This is the general rule of law, and the judgment of the commissioners should stand unless convincing proof is adduced against it. Applying this rule throughout the area, I see no objection to the application of the square-foot method to the various sections and to the amounts assessed therein.
There is a claim made that the property assessed is not in the vicinity of the improvement as required by the statute (Pamph.L. 1930, p. 1066), which says that a local improvement is one, the cost of which, or a portion thereof, may be assessed upon land in the vicinity thereof or benefited thereby.
"This phrase should be construed with reference to the improvement itself. It seems to me that the commissioners would be justified in holding that property in the drainage area is in the vicinity of the improvement where they are dealing with a main outlet to laterals serving the drainage area.
"There are certain properties along the brook the owners of which object to this assessment because they obtained no new or better drainage. By the increase in water through this brook due to the increased drainage which goes through the brook, these properties, I think, received a benefit by reason of their obtaining a better facility to pass the water through or by their property.
"Open brooks in built-up sections, as a rule, tend to deteriorate rather than to either improve or remain in their original state. The increased water due to the increased congestion or building up of the drainage area has a tendency toward deterioration in the brook itself, and I must assume that the commissioners have determined that these properties were benefited by this change in the brook, and I see no reason to disagree with them in their findings as to such property.
"In so far as the claim made as to the so-called Finger property is concerned, that the granting of the easement precludes any assessment, it must be borne in mind that the *Page 238 
easement granted was the right to construct. Distinguished from this is the construction of the drain itself. This was completed, and it is for the benefit accruing from this construction that the Finger assessment was made. I have considered the arguments of counsel as to this assessment, but I see no reason for disturbing it.
"Objection is made as to the so-called Johnson property, the objection now being made in the name of the Paulston Realty Company. Unquestionably there was a benefit received by this property by reason of the improvement, but after considering the testimony and viewing the property I am satisfied that the amount is not fair or just and that it should be reduced. I will not fix the amount at the present time, but will allow the parties to see whether they can agree on a proper reduction between now and the time that the order is entered in this matter. If they cannot agree I will then fix the amount to which the assessment should be reduced."
The Supreme Court, on appeal, affirmed the judgment below. The judgment of the Supreme Court is affirmed, for the reasons stated in the opinion of the Circuit Court judge.
For affirmance — THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, CASE, BODINE, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 12.
For reversal — None. *Page 239